**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>AFFINITY HEALTH CARE MANAGEMENT INC., et. al.,<br><br>Debtor. | Case No. 08-22175 (ASD)<br><br>*(jointly administered)*<br><br>Chapter 11 |

**DEBTORS' MOTION FOR APPROVAL OF ENTRY
INTO LETTER OF INTENT FOR POST-PETITION
FUNDING FACILITY AND FOR AUTHORITY TO PAY
DEPOSIT FOR DUE DILIGENCE COSTS AND
ATTORNEY'S FEES IN CONNECTION THEREWITH**

Affinity Health Care Management, Inc. ("Affinity"), Health Care Investors, Inc. d/b/a Alexandria Manor ("Alexandria"), Health Care Alliance, Inc. d/b/a Blair Manor ("Blair"), Health Care Assurance, L.L.C. d/b/a Douglas Manor ("Douglas"), and Health Care Reliance, L.L.C. d/b/a Ellis Manor ("Ellis") (collectively, the "Affiliates") and jointly with Affinity, the debtors and debtors in possession (the "Debtors"), by their undersigned counsel, hereby move this Court for entry of an order, pursuant to sections 105, 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing (a) approval of entry into Letter of Intent for post petition funding, and (b) authority to pay deposit for due diligence costs and attorney's fees in connection therewith.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408

and 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

2. On October 15, 2008 (the "Petition Date"), Affinity Health Care Management, Inc., the Lead Debtor, together with its affiliated debtors, Health Care Investors, Inc., dba Alexandria Manor, Health Care Alliance, Inc., dba Blair Manor, Health Care Assurance, Inc., dba Douglas Manor, and Health Care Reliance, LLC, dba Ellis Manor (collectively, the "Debtors"), filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The Court entered an order of Joint Administration on October 22, 2008. Subsequently, the Court, by Order of October 30, 2008, transferred venue to this Court.

3. Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtors continue to operate their businesses and manage their financial affairs as debtors in possession. No trustee or examiner has been appointed in the jointly administered cases of the Debtors and a Creditors Committee has recently been appointed..

4. The Lead Debtor, "Affinity", manages the business affairs of its four affiliated debtors. The four affiliated provider debtors, Health Care Investors, Inc., d/b/a Alexandria Manor, Health Care Alliance, Inc., d/b/a Blair Manor, Health Care Assurance, Inc., d/b/a Douglas Manor, and Health Care Reliance, LLC, d/b/a Ellis Manor (collectively, the "Providers", and together with the Lead

Debtor, the "Debtors") each operate a skilled nursing facility in Connecticut. Collectively, there are over 400 beds in these facilities and the Debtors have over 500 employees.

5. The filing of the cases were precipitated by the Debtors' operating losses and their incurrence of substantial debt, beyond their ability to repay as the debts were coming due.

6. On the Petition Date, the Debtors, collectively, were liable on secured claims of approximately $3.8 million, of which approximately $1.5 million is owed to the IRS, approximately $2.3 million is owed to Metro. On the Petition Date, the Debtors also owed the State of Connecticut ("CT") approximately $1.1 million, representing $500,000 for unpaid provider taxes, $240,000 for Medicaid recoupment and $350,000 for unpaid employment and unemployment taxes. Upon information and belief, CT hereby alleges to have rights of either recoupment or set-off rights of approximately $740,000 as of the filing date and that it primes the above secured parties. The Debtors, collectively, were also obligated to other unsecured creditors for approximately $10,000,000.

7. The Debtors' principal assets, on the Petition Date, were their healthcare receivables, physical assets, nursing home licenses and claims against CT for improper Medicaid recoupments and reimbursement.

---

[1] The IRS is owed approximately $1.7 million, for which tax liens of $1.2 million were filed, pre-petition. The IRS tax liens were filed on or about July 17, 2008. Under §§6321 and 6323 of the Internal Revenue Code, these liens prime those of Metro as to receivables generated 45-days after their filing. Therefore, on information and belief, the IRS holds a first-priority secured claim on the Debtor's receivables, in the amount of approximately $1.2 million.

8. The Debtors owned significant healthcare receivables on the Petition Date, which they value at approximately [$5 million.] These receivables are payable to the Debtors principally by Medicare, Medicaid and by various commercial or private payors.

9. Since the Petition Date, the Debtors have been operating using cash collateral as authorized by orders of the Court.

Post-petition liquidity funding

10. To enhance the liquidity of the Debtors' and to reduce the cost for interest and other charges like alleged legal fees of $250,000 that Metro is charging the Debtors, the Debtors and their financial advisor have been investigating sources of post-petition financing.

11. Subject to Court approval, the Debtors have accepted a letter of intent, for post-petition financing, via a factoring of the Providers' healthcare receivables in a "true-sale" of accounts, to a wholly-owned funding affiliate ("HCI") of Health Capital Investors, Inc. ("Health Capital"). A copy of the proposed Letter of Intent is attached hereto as Exhibit A.

12. The Letter of Intent, whose terms are incorporated by reference and govern, proposes that the Debtors sell their eligible healthcare receivables to HCI (the "Factor") pursuant to §§ 363(b) and (f) of the Bankruptcy Code, free and clear of liens, which liens would attach to the proceeds of the Factor's fundings or, in some cases, conceivably, be subordinated, consensually, if not paid out in full.

13. The Letter of Intent reflects a proposed maximum funding limit from the Factor's purchase of accounts of $4,250,000, pursuant to the terms and conditions thereof, with the Debtor's sale of accounts to the Factor being subject to on-site due diligence and further motion and order of this Court (the "Proposed Sale"). The Factor requires on-site due diligence to tie down more specifically the amount of the initial funding that the Providers can receive via the initial sale of accounts to the Factor.

14. The Letter of Intent also contemplates and requires, as a condition to the true-sale of the Debtor's accounts to the Factor, under a Nonrecourse Healthcare Accounts Receivable Purchase Agreement (the "Purchase Agreement") between the Debtors, as Providers and Seller, and the Factor, as Purchaser, that the Factor will receive from the Debtors a §364 first-priority priming lien on non-purchased accounts and on other assets of the Debtors to secure the performance of indebtedness, obligations and duties to the Factor under the Nonrecourse Healthcare Accounts Receivable Purchase Agreement. Benjamin Fischman and Sam Strasser the Debtors CEO and COO will issue Validity Guarantees to the Factor.

15. The Letter of Intent requires the non-refundable payment of $20,000 to Health Capital to compensate Health Capital for expenses and attorney's fees in connection with the necessary due diligence of the Debtors' operations and books and records (the "Due Diligence Deposit"), and for reimbursement of Health Capital's fees, costs and expenses, including reasonable legal fees, beyond this deposit, as set forth in the Letter of Intent.

## RELIEF REQUESTED

16. By this Motion, the Debtors are seeking approval of their entry into the Letter of Intent, and to incur the duties and obligations to Health Capital thereunder, including authority to pay the $20,000 Due Diligence Deposit. Approval of the Court under §363 of the Bankruptcy Code is sought because the Debtors' entry into the Letter of Intent is outside the ordinary course of the Debtors' business.

17. The Debtors have filed this Motion and will file an order for shortened notice due to the fact that payment of the Due Diligence Deposit be made prior to Heath Capital's commencement of on-site due diligence. Moreover, the Debtors believe that DIP Funding will help give creditors cause to believe in the Debtors long-term viability, which may help ease post-petition trade credit issues for the Debtors. Accordingly, time is of the essence with respect to approval of the Debtors' entry into the Letter of Intent and authorization of the Due Diligence Deposit, and the other fees, costs and expense reimbursements payable thereunder.

## DISCUSSION

18. The success of the Debtors' reorganization efforts in their proceeding is dependent upon having adequate financing to, among other thing, provide a source to pay the Debtors' bills during their bankruptcy reorganization.

19. Pursuant to the Letter of Intent, and upon subsequent Court approval of the Debtors' contemplated motion to approve the sale of eligible healthcare receivables to HCI under the Purchase Agreement (the "Funding

Facility Motion"), HCI shall purchase and fund the Providers' eligible accounts receivable on a regular basis, which accounts are paid principally by commercial insurance carriers, managed care companies, Blue Cross/Blue Shield, governmental contracts and/or Medicare and Medicaid, upon certain terms and conditions, and on the funding limits, as summarized and contemplated in, and on the terms set forth in, the Letter of Intent.

20. As set forth above, the Letter of Intent requires the Debtors to pay and reimburse certain due diligence costs and fees, including a nonrefundable deposit of $20,000 against the same, to cover costs and expenses incurred by Health Capital during Health Capital's evaluation of the Debtors' request for funding. The payment of the Due Diligence Deposit is due by November 20, 2008, after the Bankruptcy Court's approval of the Debtors' entry into the Letter of Intent.

21. The Due Diligence Deposit, and the payment of the other fees, costs and expenses called for by the Letter of Intent, are expenses to be incurred by the Debtors outside the ordinary course of its business. Accordingly, the Debtors requests that this Court approve the payment the Due Diligence Deposit and the Debtors' incurring the obligations called for by the Letter of Intent.

22. There is ample support for the payment of expenses and attorney's fees in connection with due diligence required by a prospective post-petition financier of the Debtors, whether a factor, as here, or a lender. *See In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd* 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2nd Cir. 1993). In

*Integrated Resources*, the debtor sought court approval to enter into a break-up fee and expense reimbursement arrangement with a party for proposed chapter 11 plan funding. The Court stated:

> [b]reak-up fees may take the form of paying the out-of-pocket expenses incurred in arranging the deal, including due diligence expenses....

23. Similarly, in *In re Bethlehem Steel Corp.*, 2003 WL 21738964 (S.D.N.Y. July 28, 2003) at *1, the Court authorized payment in the amount of $1.4 million to the steel worker' union pursuant to Section 363(b) of the Bankruptcy Code to "[u]ndertake the due diligence and analysis that will be required in order for (the union) to participate in discussions regarding the restructuring of the Company.…"

24. In this case, the payment of the Due Diligence Deposit, and the other fees and costs called for by the Letter of Intent, is warranted and necessary to allow the parties to proceed with the due diligence that will hopefully result in sale of the Debtors' accounts receivable to the Factor, pursuant to the terms of the new funding facility for the Providers and the Lead Debtor, under a Court order approving the Purchase Agreement and the other funding documents, once they are negotiated, drafted, executed and fully agreed upon between the parties, and presented in the Funding Facility Motion.

25. In addition, the Debtors believe that the terms and conditions of the Letter of Intent are fair and reasonable and provide receivables based funding that will enable the Debtors to successfully stay in business and facilitate their

reorganization. The Debtors, therefore, requests that their entry into the Letter of Intent, and its payment of the Due Diligence Deposit, and the other fees, costs and expenses thereunder, be ratified.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully requests that this Court enter an Order: (A) Approving their entry into the Letter of Intent, and their performance of the obligations and duties to Health Capital thereunder; and (B) Granting the Debtors such other and further relief as may be appropriate under the circumstances.

Pullman & Comley, LLC
Proposed Attorneys for the Debtors
AFFINITY HEALTH CARE MANAGEMENT, INC., ET AL

By: /s/ Elizabeth J. Austiin
Elizabeth J, Austin (ct04383)
Irve J. Goldman (ct02404)
Jessica Grossarth (ct23975)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000  Fax: (203) 576-8888
eaustin@pullcom.com
igoldman@pullcom.com
jgrossarth@pullcom.com

-and-

Hofheimer, Gartlir & Gross, LLP
Gary B. Sachs, Esq.
530 Fifth Avenue
New York, NY 10036
(212) 818-9000 Fax: (212) 869-4930
gsachs@hgg.com
Proposed Attorneys for the Debtors, Affinity Health Care Management, Inc., et al .