UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
                                                    )
In Re:                                              )          Chapter 11
                                                    )
AFFINITY HEALTH CARE                                )          Jointly Administered under
MANAGEMENT, INC., *et al.*,[1]                      )          Case No. 08-22175 (ASD)
                                                    )
            Debtors.                                )          Re: Doc. I.D. No.  211
                                                    )
------------------------------------------------------

**MEMORANDUM ORDER ON MOTION SEEKING PROCEDURES
FOR MONTHLY COMPENSATION OF PROFESSIONALS AND OTHERS**

**I. INTRODUCTION & BACKGROUND.**

Before the Court at this time is the jointly administered Debtors' <u>Motion for an Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses to Professionals</u>, Doc. I.D. No. 211 (hereafter, the "Motion"). The Motion was met with written objections (collectively, the "Objections") filed by the United States Trustee, Doc. I.D. No. 223, and secured creditor, Metro Exchange, LLC, Doc. I.D. No. 224. After notice, a hearing on the Motion and Objections was held before this Court on January 22, 2009 (hereafter, the "Hearing"). For the reasons stated hereafter, the Motion shall be DENIED.     Through the Motion, the Debtors seek to establish a procedure under which certain professionals "that are or become duly retained"[2] may be compensated from estate assets on a monthly

---

[1] Affinity Health Care Management, Inc., Case No. 08-22175, Health Care Investors, Inc. d/b/a Alexandria Manor, Case No. 08-22177, Health Care Alliance, Inc. d/b/a Blair Manor, Case No. 08-22178, Health Care Assurance, L.L.C. d/b/a Douglas Manor, Case No. 08-22179, and Health Care Reliance, L.L.C. d/b/a Ellis Manor, Case No. 08-22180.

[2] The proposed Order accompanying the Motion limits application of the requested procedures to "professionals who are either specifically identified in the Motion and have been retained by order of this Court . . ., or who, subsequent to the filing of the Motion, have been authorized to utilize the procedures established by this order and have been retained by order of this Court . . . ."

basis prior to actual court approval of their fees and/or expenses. Professionals that "are" retained, or are the subject of pending applications for approval of their retention (hereafter, the "Professionals"), include the law firm of Hofheimer, Gartlir & Gross, LLP (the "Hofheimer Firm") as Debtors' bankruptcy counsel, the law firm of Eiseman Levine Lehrhaupt & Kakoyiannis, PC ("ELLK") as their substitute counsel,[3] the law firm of Pullman & Comley, LLC ("P&C") as Debtors' Connecticut bankruptcy counsel, the accounting firm of Genovese & Wonneberger, LLC ("G&W") as Debtors' accountants, Frederick Dalicandro d/b/a East River Consulting ("Dalicandro") as Debtors' health care consultant, and Joseph A. Vitale, Esq. as Debtors' special corporate counsel. In addition, the Unsecured Creditors' Committee ("Committee") has filed applications to retain the law firm of Neubert, Pepe & Monteith ("Neubert") as its counsel, and Blum Shapiro & Co. ("Blum") as its accountants. The Motion was accompanied by affidavits from ELLK, P&C, G&W, Dalicandro, Neubert, and Blum (collectively, the "Affidavits").

More specifically, the Motion, and proposed order submitted in connection therewith, seek approval of a procedure under which, *inter alia*, the Professionals can be paid monthly for 80% of accrued fees and 100% of accrued expenses that are not objected to by any of a group of parties entitled to notice,[4] which fees and expenses would ultimately be allowed and approved by this Court through applications pursuant to Sections 330 and 331 of the Bankruptcy Code served and filed "approximately every 120 days but no more than every

---

[3] Although the Hofheimer Firm has been retained as Debtors' counsel by Court order dated December 5, 2008, on December 31, 2008, the Debtors filed an application to employ ELLK as their substitute counsel and to terminate the Hofheimer Firm's retention.

[4] As proposed, those parties appear to be limited to the Debtors, counsel for the Debtors, the United States Trustee, counsel to Metro Exchange, LLC, counsel to the Internal Revenue Service, counsel to the State of Connecticut, and counsel to the Committee (collectively, the "Notice Parties").

150 days", and subject to disgorgement to the extent such fees and/or expenses are not so allowed and approved by the Court (hereafter, the "Monthly Payment Procedure").[5]

For all intents and purposes the Affidavits are all identical, and assert that Section 331's 120-day interim allowance and payment scheme, see Discussion infra, presents the hardship of "significant" and "disproportionally high" accounts receivable, and that each of the Professionals "would have the wherewithal to return or disgorge at least 120-days worth of Estimated Monthly Fees if compelled to do so." E.g., Affidavit of Elizabeth J. Austin (P&C), ¶ 8. In addition, certain of the Affidavits assert prejudice as a result of the absence of pre-petition retainers.[6] The Dalicandro Affidavit, at ¶ 5, also alleges a heightened hardship on him as a sole practitioner.

## II. DISCUSSION

At the outset the Court notes that the most relevant statutory basis[7] for the relief requested in the Motion is Bankruptcy Code Section 331, which provides in pertinent part:

> "Any professional . . . may *apply* to the court not more than once every 120 days . . ., or more often if the court permits, for such *compensation for services rendered before the date of such an application* or reimbursement of *expenses incurred before such date* as is provided under section 330 . .

---

[5] The proposed Monthly Payment Procedure tracks substantially the procedures prescribed by Amended General Order M-219, M-348 of the United States Bankruptcy Court for the Southern District of New York, entered March 21, 2008. (copy annexed to the Motion as Exhibit "A") (the "SDNY General Order").

[6] In the Motion the Debtors note that "because their cases originated in the Southern District of New York, it was expected that their Professionals could be compensated on a monthly basis pursuant to the . . . [SDNY General Order]. As a result of this expectation, the Hofheimer Firm, ELLK, G&W and Dalicandro assert they required less of an up-front retainer than would have been the case if a monthly compensation schedule were not available. If, as a result of the change in venue, these Professionals must now wait every 120 days for payment, it is expected they will request supplemental retainers, which, if allowed, would require the Debtors to expend cash that could otherwise be used for operational purposes."

[7] More specifically, the Motion seeks relief pursuant to Sections 105(a), 328(a) and 331, Fed. R. Bankr. P. 2014(a), and D.Conn. LBR 2014-1.

. . "

(emphasis added).

By its plain language Section 331 allows the Court some flexibility in determining the frequency of applications for compensation of certain professionals and others – namely, it permits a specific subset of entities to *apply* for compensation on an interim basis "not more than once every 120 days . . . *or more often if the court permits*", as provided under Section 330. Section 331 does not, however, explicitly authorize payment of professional fees in advance of their allowance. Nevertheless, this Court, as it did implicitly in In Re Haven Eldercare, 382 B.R. 180 (Bankr. D. Conn. 2008), expressly aligns itself with those Courts that have permitted such "advanced payments" in particular Chapter 11 cases, "especially those in which the secured creditor permits its cash collateral to be used to pay the administrative expenses or the post-petition lender includes such a provision in the debtor-in-possession financing agreements." In re Act Mfg., Inc., 281 B.R. 468, 478 (Bankr. D. Mass. 2002).[8] The Court also notes that at least one bankruptcy court has a "General Order" permitting such awards, see fn. 5, supra, and that the Debtors base their request on a previous opinion of this Court suggesting that Monthly Payment Procedures similar to the procedures proposed here may be authorized under special circumstances. Haven Eldercare, supra. As noted by this Court in Haven Eldercare, the leading reported

---

[8] As already noted secured creditor Metro Exchange, LLC objects to the proposed Monthly Payment Procedures. Doc. I.D. No. 224. The Court notes, however, that the *Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection*, Doc. I.D. 221, authorizing use of cash collateral in accordance with a budget attached thereto through February 20, 2009, includes a monthly amounts for payments to professionals, provides for adequate protection to secured creditors, and is without prejudice to secured creditors' rights to request additional adequate protection or to object to any budget item. In light of this Interim Order, and as Metro Exchange, LLC's objection is based solely on applicability of the Knudson factors, the Debtor's authority to use cash collateral to advance the proposed payments to the Professionals under the Monthly Payment Procedure is not presently at issue.

case allowing such a fee advance procedure seems to be United States v. Knudsen Corp. (In re Knudsen Corp.), 84 B.R. 668 (9th Cir. BAP 1988). Knudsen provides a framework for analysis of the issue at bar: a four-factored template for determining whether a given case qualifies as a "rare" case in which an advance payment scheme may be implemented, to wit –

> 1. the case is an unusually large one in which an exceptionally large amount of fees accrue each month;
>
> 2. the court is convinced that waiting an extended period for payment would place an undue hardship on the professional(s);
>
> 3. the court is satisfied that the professional(s) can respond to any reassessment; and
>
> 4. the retainer procedure is, itself, the subject of a noticed hearing prior to payment thereunder.

See 84 B.R. at 672-73. The following discussion examines each of these factors in greater detail.

### 1. The Magnitude of the Cases and Fees

The present record in these jointly-administered cases does not support a finding that any of the *individual* cases for which the Monthly Payment Procedure is sought are "unusually large";[9] nor is it likely that the amount of professional fees to be allocated to any *one* of the individual Debtors' estates would be "exceptionally large". The present Debtors' cases are significantly smaller than, and have fewer professionals retained under Sections 327 or 1103 of the Bankruptcy Code, than Haven Eldercare, wherein the Court denied a similar motion upon, *inter alia*, findings identical to those in the immediately preceding

---

[9] It is not appropriate for this Court to engage, *sua sponte*, a legal fiction by treating these jointly-administered cases as if they had been substantively consolidated.

sentence.

Moreover, even assuming that it would be appropriate to assess the magnitude of these jointly-administered cases, or the professional fees/expenses generated within them, on an aggregate basis, this Court does not view the *mere* magnitude of a case or its professional fees as particularly germane to the question of the appropriateness of the Monthly Payment Procedure. What *is* potentially relevant to that question is the *relative* hardship that would be visited upon a *particular* professional in a *particular* case, regardless of the *absolute* size of the subject case or fees. That concept is embraced by the second Knudsen factor, discussed immediately below.

### 2. The Hardship Imposed upon the Parties

This Court acknowledges, and the Bankruptcy Code contemplates, that there may be instances in which the rate and magnitude of accrual of professional fees in a given case could present an undue hardship for a particular professional if compensation is not considered by the Court and paid on a schedule that is more frequent than the presumptive 120-day interim fee schedule provided by Code Section 331. As this Court observed in Haven Eldercare, this may be true, for instance, where (i) the resources dedicated to a given case represent a particularly large proportion of a professional's total resources, and (ii) the professional's usual receipt of payment for services is materially more prompt than that available under the 120-day compensation scheme contemplated by Section 331.

The factual record before the Court at this time, however, is insufficient to permit the Court to conclude that a 120-day compensation schedule would present a hardship to any[10]

---

[10] It is necessary that hardship be established *individually* for *each* Professional that desires to participate in the proposed Monthly Payment Procedure.

of the Professionals that are proposed to be participants in the proposed Monthly Payment Procedure. While the Affidavits assert the hardship of "significant" and "disproportionally high"[11] accounts receivable, no evidence was presented to support such a finding. And while the Affidavits assert the Professionals' usual receipt of payment for services is materially more prompt than that available under the 120-day compensation scheme contemplated by Section 331, it appears that assertion was founded on a calculus which included non-bankruptcy matters.[12] The Court finds a professional firms' usual fee practices for non-bankruptcy matters of little relevance to the present proceeding, since the statutory requirements and limitations of §§330 and 331 of the Bankruptcy Code have no applicability to such *non-bankruptcy* matters.

There is no basis, other than the bald, conclusory assertions in the Affidavits, to support a requisite finding of individualized hardship. The relevant question – what is the *relative* hardship that would be visited upon a *particular* professional in a *particular* case – cannot be answered on the existing record.

### 3. Ability to Respond to Reassessment or Adjustment

---

[11] *See, e.g.*, Affidavit of Elizabeth J. Austin (P&C), ¶ 7. ("In other words, the firm's usual receipt of payment for services is materially more prompt than every 120 days, particularly for matters that would be expected to accrue fees and expenses of a magnitude that I anticipate will occur in these cases. Indeed, I would expect for a non-bankruptcy matter, if fees in the amount of the Estimated Monthly Fees [between $17,500.00 and $35,000.00 in the case of P&C, *see* Austin Affidavit, ¶ 4] were permitted to accrue and remain unpaid for a period of four months, my Firm would have by that time, if not sooner, directed the professional responsible for the matter to cease providing services to the client and, for court matters, to seek leave to withdraw").

[12] *See e.g.*, ELLK Affidavit, ¶ 8. ("Indeed, I would expect that for a *non-bankruptcy* matter, if fees in the amount of the estimated Monthly Fees were permitted to accrue and remain unpaid for a period of four months, ELLK would have by that time, if not sooner, directed the professional responsible for the matter to cease providing services to the client and apply to the applicable court to seek leave to withdraw . . . .").

A prerequisite to any professional compensation scheme that permits interim fee *payment* to be made in advance of *allowance* is an *assurance* that the subject professional will be able to respond to any disgorgement order arising from a court's subsequent *disallowance* of fees previously *paid* (hereafter, "Reassessment").[13]

As in Knudsen, the Monthly Payment Procedure's proponents here suggest that Reassessment risk is addressed and ameliorated by that procedure's provision of a 20% "holdback" in the monthly payment of fees not objected to by any of the Notice Parties. In the Court's opinion, a 20% fee "holdback", alone, is insufficient to assure the Court that a given Professional can respond to a disgorgement order in the event of Reassessment.[14] The unstated premise of such a "holdback" is that the Court will never disallow more than 20% of fees that are not subject to objection by the parties. However, this Court has an independent duty to scrutinize thoroughly all professional fees, not just those objected to by parties-in-interest.

Because the risk of Reassessment is real, this Court must assure itself that under all circumstances each of the subject Professionals will be able to satisfy a disgorgement order *in full* on a *timely basis*. The Affidavits provide no such assurance as they are limited to simple statements that the particular professional could disgorge if required to do so. No evidence, documentation, or detail has been provided which serves to inform the Court of

---

[13] Likewise, the Court is legitimately concerned with the ability of a given Professional to respond to an order that it disgorge monthly fees *even if allowed*, in the event that a given Debtor's estate proves to be administratively insolvent (hereafter, "Adjustment"). This Court recognizes that the mere *presence* of Adjustment risk is not salient in the present discussion since that risk is present even under the 120-day scheme of Section 331. However, Adjustment risk is relevant to an assessment of the Monthly Payment Procedure by virtue of *degree* – *i.e.* the Adjustment risk that is always present for interim fee awards is arguably four times as acute under a monthly, as opposed to a 120-day, payment procedure.

[14] These concerns are equally applicable to the risk that the Court may deny reimbursement of *expenses*, which are not subject to any "holdback".

the particular financial wherewithal of any of the Professionals. Once again, the bald assertions in the Affidavits, are insufficient to support a finding that any particular Professional is financially positioned to respond to any order of disgorgement in full on a timely basis.

In addition, none of the Professionals have offered to provide any alternative method of assurance – such as, *e.g.*, the posting of a bond or, in the case of attorneys, the placing of fee/expense payments in a trust account until such time as they are finally allowed – or suggested that such alternatives were not feasible.

### 4.  Approval of the Monthly Payment Procedure After Notice

This factor does not present an independent impediment to implementation of the Monthly Payment Procedure. This matter has been fully heard on due and fair notice.

### 5. Other Factors

The Court is cognizant, as argued by the Debtors, that in considering similar interim compensation procedures, other courts have not limited the analysis to the questions of undue hardship and ability to disgorge, but have included as additional relevant factors the following, *inter alia*:

> whether other fee arrangements would impose a hardship on the debtor, the effect of the proposed procedure on the ability of the Court to adequately review professional fee applications, the payment arrangement's economic impact on the ability of the debtor's ongoing business operation, the ability of the debtor to reorganize, or the reputation of debtor's counsel.

In re ACT Manufacturing, Inc., supra, at 477 (quoting In re Mariner Post-Acute Network, Inc., 257 B.R. 723, 731 (Bankr. D. Del. 2000); also indicating that secured creditor's consent to such use of its cash collateral is relevant); see also In re Pittsburgh Corning

Corp., 255 B.R. 162. 171 (Bankr. W.D. Pa. 2000) (may be other factors).

To the extent it was argued at the Hearing that "other fee arrangements would impose a hardship on the present Debtors", that the Monthly Payment Procedures, or lack thereof, would have an economic impact on the Debtors' ongoing business operation, or impact the debtors' ability to reorganize, the Court is not persuaded that these factors are of relevance or significance here.  The Court also believes its ability to adequately review professional fee applications in accordance with Section 330 weighs against the proposed procedures.  Although the Affidavits assert that several of the Professionals do not have retainers and lack protection for payment of fees and expenses, there has been no suggestion that the Debtors' ability to retain able counsel is imperiled.

### III.  CONCLUSION

The Court concludes, on the current record, that the Monthly Payment Procedure as proposed is inappropriate for implementation as to any particular professional in any of these jointly-administered cases. Accordingly, and for the foregoing reasons, the Motion (Doc. I.D. No. 211) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: January 27, 2009                                              BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge