# EXHIBIT A



# HEALTH CAPITAL

545 Fifth Avenue • 9th Floor • New York, NY 10017
Telephone: 212-421-4040 • Facsimile: 212-421-7171

May 5, 2010

Mr. Benjamin Z. Fischman
Chief Executive Officer
Affinity Health Care Management, Inc.
221 East 33rd Street, Suite 1H
New York, New York 10016

Dear Mr. Fischman:

Health Capital Receivables Funding Administrative Corporation, a New York corporation, ("HCI"; variously, "Purchaser"), is pleased to present the following letter regarding its intention to provide Chapter 11 exit funding as set forth herein. You have advised HCI that the Debtors identified below, pursuant to a Chapter 11 plan of reorganization to be confirmed in the bankruptcy cases of the Provider Debtors set forth below (the "Plan"), are seeking Chapter 11 exit funding in the amount of $4.5 million dollars in connection with consummation of the Plan and the transactions therein.

**Overview**: This letter sets forth the principal terms under which HCI, subject to full execution of mutually acceptable legal documents, and to all terms and conditions hereof, with Bankruptcy Court approval, intends to provide an accounts receivable Chapter 11 exit funding facility under §§105, 363(b), 1129 and 1142 of the Bankruptcy Code (title 11, U.S.C. §101, et. seq.) and Fed. R. Bankr. P. 2002, 6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure to the following persons, each in their capacities as "reorganized debtors" under the Plan, such persons being jointly and severally, individually and collectively, the "Provider," pursuant to a Third Amended Joint Chapter 11 plan of reorganization dated May 6, 2010 to be confirmed in the bankruptcy cases as such plan may be amended thereafter, before it is confirmed (the "Plan") of the following persons (the "Provider Debtors"): (1) Health Care Investors, Inc., dba Alexandria Manor, a Chapter 11 debtor and debtor-in-possession in Case No. 08-22177 pending in the U.S. Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court"), formerly Case No. 08-14019 (ALG) in the U.S. Bankruptcy Court for the Southern District of New York; (2) Health Care Alliance, Inc., dba Blair Manor, a Chapter 11 debtor and debtor-in-possession in Case No. 08-22178 pending in the Bankruptcy Court, formerly Case No. 08-14020 in the U.S. Bankruptcy Court for the Southern District of New York; (3) Health Care Assurance, LLC, dba Douglas Manor; a Chapter 11 debtor and debtor-in-possession in Case No. 08-22179 pending in the Bankruptcy Court, formerly Case No. 08-14023 in the U.S. Bankruptcy Court for the Southern District of New York, and (4) Health Care Reliance, LLC, dba Ellis Manor, a Chapter 11 debtor and debtor-in-possession in Case No. 08-22180 pending in the Bankruptcy Court, formerly Case No. 08-14024 in the U.S. Bankruptcy Court for the Southern District of New York. The bankruptcy cases of the Provider Debtors are presently jointly administered in the Bankruptcy Court, together with that of Affinity Health Care Management, Inc., Chapter 11 debtor and debtor-in-possession in Case No. 08-22175 currently pending in the Bankruptcy Court, formerly in Case No. 08-14108 in the U.S. Bankruptcy Court for the Southern District of New York (the "Lead Debtor"; collectively with the other providers, as debtors-in possession, the "Debtors"). The Providers, each in their

1

capacities as reorganized debtors, and the Lead Debtor, as Validity Guarantor, itself in its capacity as reorganized debtor, are also sometimes referred to herein, collectively, as the "Reorganized Debtors."

The purchase of accounts by HCI, as Purchaser, from the Provider, as seller, under the Exit Funding Facility (as defined below), from and after the Effective Date of the Plan, shall be made free and clear of liens, claims, interests and encumbrances pursuant to the terms of a November 18, 2009, Nonrecourse Healthcare Accounts Receivable Purchase Agreement (the "Existing Purchase Agreement") between Health Capital Receivables Funding Special Purpose Corporation I, a New York corporation ("HCRFSPC"), as purchaser, and the Provider Debtors, individually and collectively, jointly and severally, as seller, approved by Bankruptcy Court Order entered effective November 20, 2009, as later amended, in minor respects, on December 30, 2009, nunc pro tunc to November 20th, and thereafter further amended to assign the interest of HCRFSPC to HCI and to extend the maturity date of the facility, as such Existing Purchase Agreement is assumed, amended and ratified (as so assumed, amended and ratified, the "Purchase Agreement") pursuant to a Ratification, Assumption and Amendment Agreement between HCI and the Reorganized Debtors, effective as of the Reorganized Debtors' emergence from bankruptcy, together with the related documents and instruments (bills of sale, financing statements, Validity Guarantees, etc.) (collectively, with the Purchase Agreement as so assumed, amended and ratified, the "Exit Funding Facility"). Under the Ratification, Assumption and Amendment Agreement the Reorganized Debtors will assume all obligations and duties of the Debtors under the Existing Purchase Agreement and its related funding documents and instruments, as such obligations and duties are so amended, assumed and ratified. For clarity, all references hereinafter below to the "Purchase Agreement" shall mean the Existing Purchase Agreement, as ratified, assumed and adopted by the Providers, in their capacities as Reorganized Debtors, pursuant to the Plan and the Bankruptcy Court's various orders approving the Plan and the Exit Funding Facility.

Under the Purchase Agreement included in the Exit Funding Facility, HCI will take a first-priority security interest in the accounts it chooses to purchase, in its good faith discretion, from the Provider (the "Purchased Accounts") and in the related books and records, billing and collection files and general intangibles related thereto, as owner thereof, with a first-priority security interest therein, as buyer and owner thereof. The obligations and indebtedness of Provider to HCI under the Purchase Agreement will be secured by first-priority liens in non-purchased accounts receivable and in all other assets of the Providers, as Reorganized Debtors, subject only to senior liens and interests of the FHA mortgagees, as security for the rental obligations of the Reorganized Debtors' to their respective landlords, in (i) the operating licenses and the other healthcare and long-term licenses of the Reorganized Providers; (ii) the Reorganized Provider's Provider Agreements with Medicare and with Medicaid; (iii) the certificates of Need of the Reorganized Providers; (iv) the Reorganized Debtors' leasehold interests and (v) all equipment of the Reorganized Debtors (other than equipment used to bill or collect accounts sold and pledged to HCI under the Exit Funding Facility) all as more fully set forth in an Intercreditor Agreement to be mutually agreed upon between HCI, HUD, FHA Mortgagees, and the Reorganized Providers.

**Financial Information and Plan Projections**: The Debtors and the Reorganized Debtors hereby represent and covenant (and it is a condition to HCI's providing exit funding hereunder) that (a) all information, taken as a whole (other than the financial information of a general nature, projections, financial forecasts and other forward-looking information (the "Projections") that has been or will be made available to HCI and its affiliates by the Debtors, the Reorganized Debtors or any of their affiliates or representatives in connection with the exit funding (the "Information") was or will be, when furnished, complete and correct in all material respects and did not or will not, when furnished, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements

2

contained therein not materially misleading in light of the circumstances under which such statements were or are made and (b) the Projections that have been or will be made available to HCI by the Debtors, the Reorganized Debtors and any of their affiliates or representatives have been or will be prepared in good faith based upon reasonable assumptions (it being understood and agreed that financial projections are not a guarantee of future performance and actual results may differ from financial projections). The Debtors and the Reorganized Debtors agree to supplement the Information and any Projections previously furnished, or that will be furnished, from time to time, as needed, and to promptly notify HCI, in the event there arises any changes in circumstances that could call into question the continued reasonableness of any Information or any assumption underlying any Projections previously furnished by you or on your behalf to HCI. It is further agreed that HCI may use and rely on the Information and the Projections you provide without independent verification thereof.

**Certain Conditions Precedent:** Provision by HCI of the Exit Funding Facility as contemplated by this letter is subject to (i) the satisfactory completion of HCI's due diligence on and acceptance of the projected sources and uses of funds by the Reorganized Debtors, on the effective date of the Plan; (ii) the acceptance by HCI of the terms and conditions of the Plan, to be evidenced by HCI's vote in favor thereof; (iii) the negotiation, preparation, execution and delivery of mutually acceptable final legal documentation incorporating the terms of this letter and otherwise acceptable to HCI; satisfactory in form to HCI and its outside legal counsel; (iv) to confirmation of the Plan by the Bankruptcy Court and to satisfaction of the terms and conditions thereof; (v) the closing, post-confirmation of the Plan and prior to the Effective Date of the Plan, on a restructuring of the mortgage loans, guaranteed by the U.S. Department of Housing and Urban Development ("HUD"), between the mortgagees and the landlords of the Providers and a related closing on agreements which shall reduce the rental obligations of the Provider Debtors now existing to levels which shall not to exceed the post-Effective Date rental obligations projected in the projections last provided to HCI on April 26, 2010, such rental levels reflecting the more favorable terms of the mortgage restructurings, as more fully described in the Ratification, Assumption and Assignment Agreement between HCI and the Reorganized Debtors; (vi) entry by HCI into Intercreditor Agreements, acceptable to HCI, with Housing & Healthcare Finance, LLC, a Delaware limited liability company (HHF) and receipt by HCI of frozen junior liens on equity interests (stock and LLC membership interests) owned by Messrs. Fischman and Strasser in the Alexandria, Blair and Douglas Provider landlords, behind the first lien of HHF therein, as further collateral security for the obligations and duties of Messrs. Fischman and Strasser under their respective Validity Guarantees with respect to the obligations of the Providers, as reorganized debtors, under the Purchase Agreement and (vii) the satisfaction (or waiver) of all other conditions set forth in this letter and the compliance by the Debtors and Reorganized Debtors with the terms and conditions hereof. No closing on the Exit Funding Facility and no funding thereunder shall take place if the conditions set forth in this letter of intention are not satisfied or waived by HCI, if any covenant or agreement in this letter is not complied with, or if any representation or warranty in this letter is not true and correct in all material respects.

**Additional Terms:** Please note that the terms and conditions of the proposed Exit Funding Facility are not limited to those set forth herein. Matters not covered or made clear herein are subject to the mutual written agreement of the parties.

**Bankruptcy Court Motions and Orders:** The Debtors shall present a motion seeking authority to enter into the Exit Funding Facility pursuant to §§105, 363(b) and (f), and 1142 of the Bankruptcy Code (the "Exit Funding Facility Motion") and entry of a Bankruptcy Court Order approving that motion (the "Exit Funding Facility Order"), which Order, to be acceptable to HCI, must include a "true sale" finding. This

3

letter is an outline of the contemplated basis on which HCI will provide the Exit Funding Facility to the Provider. As noted, it is not exhaustive as to the final terms and conditions of the Exit Funding Facility, which final terms will reflect HCI's completion of due diligence and the result of the parties' negotiations.

**Confidentiality**: The contents of this letter may not be shared with any third party, prior to its execution, without HCI's prior written consent, except for management, and Providers' counsel, accountants and other professionals on a need-to-know basis, provided, however, that after full execution of this letter, the Providers may disclose this letter in Bankruptcy Court filings, as necessary. All persons who are informed of this letter of intent must also be informed that its contents are confidential and, with the exception of the Bankruptcy Court filings, it cannot be disclosed without HCI's prior written consent.

**Exclusivity**: From and after the acceptance hereof by the Debtors and the contemplated Reorganized Debtors, and up to any including June 15, 2010, each of them agrees to work exclusively with HCI to accomplish the Closing on the Chapter 11 exit funding contemplated by this letter, and agrees that neither they, their affiliates or agents will, directly or indirectly, (a) engage in any discussion with an alternative factor or lender regarding Chapter 11 exit financing or exit funding, (b) solicit or accept a proposal or commitment from another lender or funding source in connection with an alternative to the Exit Funding Facility discussed herein or (c) otherwise permit or encourage another person to solicit a financing proposal, a funding proposal, or conduct due diligence in connection with an alternative financing or funding to that contemplated herein.

Without limitation of the foregoing, a summary of certain principal terms of the Exit Funding Facility is as follows:

**Healthcare Providers**:     The Providers as identified above.

**Funding Facility Amount**: Four Million Five Hundred Thousand Dollars ($4,500,000), among all Providers, combined, to be disbursed on a purchase basis. The size of the Funding Facility Amount may be increased based upon an increase of the Providers' Eligible Accounts Receivable, to be verified by HCI, in HCI's sole discretion.

**Program Overview**: HCI shall, in its good faith and sole discretion, from and after the Providers' emerging from bankruptcy pursuant to the Plan, purchase and fund eligible accounts receivable which are payable by Commercial Insurance Carriers, Managed Care companies, Blue Cross/Blue Shield, State/County/Federal Contracts, Medicare, and/or Medicaid. The Providers are responsible for supplying any and all documentation necessary to enable HCI to determine the purchase price of the accounts receivable as defined below. Under the Exit Funding Facility, it is contemplated that HCI will, in its discretion, on the terms of the Purchase Agreements, purchase substantially all eligible accounts of the Providers. The sale of accounts and of related conveyed property to HCI will be free and clear of all liens, claims, interests and encumbrances existing as the date of sale. After its initial funding, on or about the effective date of the Plan, HCI will thereafter, in its discretion, continue to purchase new eligible accounts receivables arising from the Providers' delivery of healthcare services thereafter, on a weekly, bi-weekly or monthly basis.

**Term**: The Exit Funding Facility, as it may be later extended or amended, will initially be made available to the Providers for a period which ends on December 31, 2010, unless further extended, in HCI's sole discretion. HCI commits, on the terms of the Ratification, Assumption and Amendment Agreement, at no further origination fee, to a further additional term to bring the term to twelve (12) months (including the

4

initial term aforesaid), provided that (a) the variance between (i) the actual cumulative operating cash flows for June 1, 2010 through December 31, 2010, as compared to the cumulative operating cash flows for such period in the latest projections provided to HCI on April 26, 2010, do not vary adversely by more than 7.5% from the latest projections so provided to HCI (provided, however, that further capital contributions by Ben Fischman and Sam Strasser during such period, above those shown in the projections given to HCI on April 26th, shall be treated as operating cash flow for this purpose) and (ii) the ending cash balance on December 31, 2010, as compared to the projected ending cash balance at that time, do not vary adversely by more than 5%; and (b) there has been no prior Event of Default under or any Event of Default then existing in the Exit Funding Facility and (c) there is no material increase (15% or more) in the amount and aging of trade payables, as to any age category (current, 30-day, 60-day, 90-day and over 120-days) at the end of the term ending December 31, 2010, compared to the aging and amount of trade payables on April 27, 2010.

**Use of Proceeds**: To provide funding, together with capital contributions by the existing equity holders of the Debtors, for emergence of the Providers from bankruptcy, to make payments under the Plan, and to provide working capital on a going forward basis to the Providers to fund daily business operations.

**Eligible A/R**:   All Accounts Receivable which have not reached their respective bar dates for billing and collection which are owed by the following payors: Commercial Insurance payors, HMO/PPOs, Blue Cross/Blue Shield, Medicare, Medicaid, and/or State/County/Federal Governmental Contracts (all of the foregoing hereinafter defined, collectively, as "Third Party Payors" or, variously, "Payors").

**Ineligible A/R**: Accounts Receivable, which are disputed, or are the subject of defenses, set-offs or counterclaims, self-pay accounts, and any invoices which contain a gross invoice size of less than $50, at the time of billing.

**Purchase Price**: The Purchase Price for each Proposed Account shall equal 100% of the aggregate of the expected payments from the Payor (the "Net Realizable Value") of the Proposed Account(s), net of HCI's discount fees.   The Net Realizable Value ("NRV") with respect to an Account shall mean the gross amount billed to the applicable Third Party Payor (obligor) by the applicable Provider less anticipated contractual allowances and discounts taken, available or extended by the Payor, whether taken or not, and credits or deductions of any kind allowed or granted to or taken by the Payor, and, if applicable, a dilution factor, all of which shall be determined in Purchaser's discretion and agreed upon by Provider, evidenced by its execution of Bills of Sale, and represents the amount reasonably anticipated by Purchaser to be collected on the Purchased Account from the Payor (excluding any amounts paid directly by patients), determined based on actual collection experience.

Unless the Provider is in default, upon collection of the Purchased Account(s) and occurrence of the Batch Closure Date HCI shall credit to the Provider the excess of the collections received over (i) the initial Advance on the Batch, at its purchase; (ii) the discount fees; (iii) additional fees and costs due to HCI by the Providers (if any) and (iv) any required Reserve additions (if any).  For this purpose, the "Batch Closure Date", which is for purposes of calculating discount fees and  reserve releases, means, as to each Batch of Purchased Accounts (the "Batch"), the date when the Purchaser has recovered an amount equal to the Advance on the respective Batch.

**Advances**: HCI will advance, on a weekly, bi-weekly or a monthly basis, in its discretion, an amount equal to 80% of the NRV of the Purchased Accounts, as a payment against the full Purchase Price of the subject

5

accounts. HCI may increase the advance rate based upon the collections performance of the funded accounts receivable.

**Reserve:** The Reserve maintained on Purchaser's books shall be a bookkeeping account, only. Advances and other purchase price payments, together with discount fees and other fees, costs and expenses due to Purchaser hereunder, including those arising from charge-backs, may be charged (debited) to the Reserve. The Reserve shall be credited with the Purchase Price and with collections on non-factored funds, such credits being disbursed as noted above.

**Reserve Requirement:** Twenty percent (20%) of the outstanding aggregate uncollected Advances on Purchased Accounts with respect to all open Batches.

**Discount Fees:** The following monthly discount fees will be applied to the Net Realizable Value of open accounts receivable batches funded by HCI:

For any HCI funded accounts receivable batches which, contain an average <u>gross invoice size</u> of <u>greater than $1,250</u>:

| HCI's Monthly Advances: | Discount Fee: |
|---|---|
| Less than or Equal to $350,000 | 1.75% |
| Greater than $350,000 And Less than $500,000 | 1.675% |
| Greater than $500,000 And Less than $1.75 Million | 1.50% |
| Greater than $1.75 Million And Less than $3.5 Million | 1.45% |
| Greater than or Equal to $3.5 Million | 1.39% |

---

For any HCI funded accounts receivable batches, which contain an average <u>gross invoice size</u> of <u>less than $1,250</u>:

| HCI's Monthly Advances: | Discount Fee: | Servicing Fee*: |
|---|---|---|
| Less than or Equal to $350,000 | 1.75% | $2.50 |
| Greater than $350,000 And less than $500,000 | 1.675% | $2.50 |

6