# EXHIBIT 4
# PART ONE

# PLAN OF REORGANIZATION

# RATIFICATION, ASSUMPTION AND AMENDMENT AGREEMENT

RATIFICATION, ASSUMPTION AND AMENDMENT AGREEMENT

THIS RATIFICATION, ASSUMPTION AND AMENDMENT AGREEMENT (the "**Ratification Agreement**" or, variously, the "**Agreement**") dated as of May ___, 2010, by and among HEALTH CARE INVESTORS, INC., a Connecticut corporation dba Alexandria Manor, formerly a debtor and debtor-in-possession in Case No. 08-22177 in the U.S. Bankruptcy Court for the District of Connecticut (the "**Bankruptcy Court**"), (2) HEALTH CARE ALLIANCE, INC., a Connecticut corporation, dba Blair Manor, formerly a debtor and debtor-in-possession in Case No. 08-22178 pending in the Bankruptcy Court; (3) HEALTH CARE ASSURANCE, LLC, a Connecticut limited liability company dba Douglas Manor; formerly a debtor and debtor-in-possession in Case No. 08-22179 pending in the Bankruptcy Court, and (4) HEALTH CARE RELIANCE, LLC, a Connecticut limited liability company dba Ellis Manor, formerly a debtor and debtor-in-possession in Case No. 08-22180 pending in the Bankruptcy Court, *each of these four persons, in its capacity as a reorganized debtor, being individually and collectively, jointly and severally, a "Provider"; collectively, the "Providers"*), together with AFFINITY HEALTH CARE MANAGEMENT, INC., a New York corporation, formerly a debtor and debtor-in-possession in Case No. 08-22175 currently pending in the Bankruptcy Court (collectively, with the Providers, the "**Reorganized Debtors**") and HEALTH CAPITAL RECEIVABLES FUNDING ADMINISTRATIVE CORPORATION, a New York corporation ("**HCI**") who is assignee of Health Capital Receivables Funding Special Purpose Corporation I, a New York corporation ("**HCRFSPC**").

## WITNESSETH

WHEREAS, the Debtors originally filed for relief under Chapter 11 on October 14, 2008, and until the date hereof, were formerly each Chapter 11 debtors and debtors-in-possession (collectively, the "Debtors") in cases jointly administered under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Connecticut, and, therein, each retained possession of its assets and was authorized under the Bankruptcy Code to continue the operation of its business as a debtor-in-possession; and

WHEREAS, on November 20, 2009, the Bankruptcy Court entered an Order (I)(A) Approving Sale of Provider Accounts Receivable To Health Capital Receivables Funding Special Purpose Corporation I Pursuant To §§363(b) and (f) of the Bankruptcy Code; (B) Granting First-Priority Security Interests On Purchased Accounts As Owner Thereof; (C) Authorizing Indebtedness With Administrative Super-Priority And Secured By Liens On And Security Interests In Non-Purchased Accounts And On All Other Assets Of the Providers Pursuant To §§364(c) and (d) Of The Bankruptcy Code And (II) Granting Related Relief (the "**First Sale Order**"), as amended and corrected in minor respects, *nunc pro tunc to November 20th*, by an Order entered December 30, 2009 (collectively, the "**DIP Funding Facility Order**"; variously, the "**DIP Funding Order**"), which authorized the Debtors, as sellers, to enter into a Nonrecourse Healthcare Accounts Receivable Purchase Agreement with Health Capital Receivables Funding Special Purpose Corporation I ("**HCRFSPC**"), as Purchaser, dated November 18, 2009, as thereafter amended, modified and restated, from time to time (the "Existing Purchase Agreement", including by this Agreement (the "**DIP Purchase Agreement**") together with the related funding instruments and documents (collectively, together with the DIP Purchase Agreement, the "**DIP Funding Facility**"; variously the "**Post-Petition Funding**

Facility"), and

      **WHEREAS**, pursuant to the DIP Funding Order and the DIP Funding Facility HCRFSPC made its initial purchase of accounts and related books, records and other Conveyed Property from the Debtors on November 23, 2009, and also thereafter, from time to time and, moreover, after HCI received by assignment HCRFSPC's interest in the DIP Funding Facility HCI has, from time to time, generally weekly, purchased Accounts and related books and records and other Conveyed Property (as defined in the DIP Purchase Agreement") from the Provider Debtors, and made advances and provided other financial accommodations to, the Provider Debtors, with HCI taking a first-priority security interest in such Purchased Accounts and other Conveyed Property (as both terms are defined in the DIP Purchase Agreement), as owner and buyer thereof, and

      **WHEREAS**, HCI (and previously, HCRFSPC) also received, under the DIP Funding Order and the DIP Funding Facility a first-priority lien and security interest in Non-Purchased Accounts and in all other assets of the Provider Debtors, as security for the indebtedness and obligations of the Providers arising from, among other things, unsatisfied chargebacks and fees and expenses owed by the Providers to the purchaser under the DIP Purchase Agreement; and

      **WHEREAS**, the Debtors filed a Third Amended Joint Plan of Reorganization For Affinity Health Care Management, Inc., Health Care Investors, Inc., Health Care Alliance, Inc., Health Care Assurance, LLC and Health Care Reliance, LLC dated May 6, 2010, as thereafter amended, from time to time (the "**Plan**"), and the Plan contemplates that HCI will, pursuant to the DIP Purchase Agreement, as amended and ratified by this Agreement (the "Purchase Agreement") and the related instruments and documents called for by the same (all such other funding instruments and documents, together with the Purchase Agreement as so ratified and amended by this Agreement being, collectively, the "**Exit Funding Facility**") continue to provide advances, factoring and related financial accommodations to the Reorganized Debtors from and after their emergence from Chapter 11 on the Effective Date of the Plan on the date hereof, and

      **WHEREAS**, the Plan provides that as a condition to HCI purchasing the Reorganized Debtors' Purchased Accounts and other Conveyed Property (as those terms are defined in the Purchase Agreement), from and after their exit from Chapter 11, the parties must enter into this Agreement, and

      **WHEREAS**, the Debtors sought permission to enter into this Agreement and the Exit Funding Facility by the Debtors' Motion For Order Under Sections 105, 363(b), 1129 and 1142 of the Bankruptcy Code, and Fed. R. Bank. P. 2002, 6004, 9006 and 9007, In Aid Of Confirmation, Authorizing The Debtors To Enter Into Certain Agreements In Connection With An Anticipated Exit Funding Facility And For Authority To Incur And Pay Fees And Costs In Connection Therewith, dated May 5, 2010 (the "**Exit Funding Facility Motion**"), which motion has been granted by Bankruptcy Court Order (the "**Exit Funding Facility Order**"), and

      **WHEREAS**, the Reorganized Debtors, upon their exit from Chapter 11 under the Plan, on the date hereof, desire, on the terms of the  to assume and to reaffirm the duties and obligations of the Debtors to HCI under the DIP Funding Agreement and to ratify, assume and

acknowledge the Reorganized Debtors continuing liabilities to HCI thereunder, as parties to such documents, as they may be amended pursuant to the Exit Funding Facility Motion, the Exit Funding Facility Order and by this Agreement, in order to induce HCI to make continued fundings and advances to the Reorganized Debtors after they emerge from bankruptcy, as contemplated by the Plan,

**NOW THEREFORE**, in consideration of the foregoing, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, HCI and the Debtors and the Reorganized Debtors mutually covenant, warrant and agree as follows:

1. **DEFINITIONS**

    1.1     Additional Definitions. As used herein, the following terms shall have the meanings given to them below and the Factoring Agreement shall be deemed and is hereby amended to include, in addition and not in limitation, each of the following definitions:

    (a) "Bankruptcy Code" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same may have heretofore been or may hereafter be amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

    (b) "Chapter 11 Case" shall collectively mean the jointly and administered Chapter 11 cases of the Debtors.

    (c) "Collateral" shall mean, collectively, the Collateral pledged under the DIP Funding Agreement and related DIP Funding Documents, prior to the date hereof, and the Collateral pledged under the Exit Funding Facility, after the date hereof.

    (d) "Debtors" shall mean HEALTH CARE INVESTORS, INC., a Connecticut corporation dba Alexandria Manor, debtor and debtor-in-possession in Case No. 08-22177 in the U.S. Bankruptcy Court for the District of Connecticut (the "**Bankruptcy Court**"), (2) HEALTH CARE ALLIANCE, INC., a Connecticut corporation, dba Blair Manor, a debtor and debtor-in-possession in Case No. 08-22178 pending in the Bankruptcy Court; (3) HEALTH CARE ASSURANCE, LLC, a Connecticut limited liability company dba Douglas Manor; a debtor and debtor-in-possession in Case No. 08-22179 pending in the Bankruptcy Court, and (4) HEALTH CARE RELIANCE, LLC, a Connecticut limited liability company dba Ellis Manor, a debtor and debtor-in-possession in Case No. 08-22180 pending in the Bankruptcy Court, *each of these four persons, in its capacity as a reorganized debtor, being individually and collectively, jointly and severally, a "Provider"; collectively, the "**Providers**"*), together with AFFINITY HEALTH CARE MANAGEMENT, INC., a New York corporation, a debtor and debtor-in-possession in Case No. 08-22175 currently pending in the Bankruptcy Court.

    (e) "Debtor Providers" shall mean HEALTH CARE INVESTORS, INC., a Connecticut corporation dba Alexandria Manor, debtor and debtor-in-possession in Case No. 08-22177 in the U.S. Bankruptcy Court for the District of Connecticut (the "**Bankruptcy Court**"), (2) HEALTH CARE ALLIANCE, INC., a Connecticut corporation, dba Blair Manor, a

debtor and debtor-in-possession in Case No. 08-22178 pending in the Bankruptcy Court; (3) HEALTH CARE ASSURANCE, LLC, a Connecticut limited liability company dba Douglas Manor; a debtor and debtor-in-possession in Case No. 08-22179 pending in the Bankruptcy Court, and (4) HEALTH CARE RELIANCE, LLC, a Connecticut limited liability company dba Ellis Manor, a debtor and debtor-in-possession in Case No. 08-22180 pending in the Bankruptcy Court, each of these persons, individually and collectively, jointly and severally, being the "Provider" under the DIP Funding Agreement

**(f)**   "DIP Funding Facility" (variously, the Post-Petition Funding Facility) shall have the meaning set forth in the Recitals.

**(g)**   "Effective Date" shall mean the Effective Date of the Plan, under applicable bankruptcy law and the terms of the Plan.

**(h)**   "Exit Funding Facility" shall meaning set forth in the Recitals, which Recitals are adopted and incorporated by reference herein.

**(i)**   "Exit Funding Facility Motion" shall have the meaning set forth in the Recitals.

**(j)**   "Exit Funding Facility Order" shall mean and include the Order authorizing the entry by the Providers into the Exit Funding Facility pursuant to Sections 105, 1129 and 1142 of the Bankruptcy Code as may be entered by the Bankruptcy Court, each in form and substance satisfactory to HCI.

**(k)**   "Factoring Agreement" (variously, the "Purchase Agreement") shall mean the Existing Purchase Agreement bearing the effective date of November 18, 2009, as thereafter amended, from time to time to, among other things, reflect the assignment of HCRFSPC' position to HCI and to extend the term of the DIP Funding Facility, by and between HCI and the Providers, as the same now exists and is hereby ratified, assumed and amended by this Agreement, and as it may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced; and all supplements, amendments and security documents relating thereto, including, but not limited to, the agreements listed on Exhibit "A" annexed hereto, as all of the same now exist or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

**(l)**   "Plan" shall have the meaning set forth in the Recitals.

**(m)**   "Post Effective-Date Collateral" shall mean collectively all of Provider's now existing or hereafter acquired Receivables, credit balances, and any other property relating to or in respect of the Factoring Agreement, in HCI's possession or in the possession of any parent, affiliate or subsidiary of HCI and any other security for the Pre-Effective Date Obligations (whether coming into existence or into HCI's or any Parent's, affiliate's or subsidiary's of HCI's possession) and all proceeds thereof, all rights under insurance policies relating to any of (he forgoing, and all of the types or items of property described in the Factoring Agreement, all other security for the Pre-Effective Date Obligations and Post Effective-Date Obligations as provided in the Factoring Agreement and all property of

Provider's estate upon which HCI is granted a security interest or lien pursuant to a Exit Funding Order or by any United States Bankruptcy or District Court Judge.

    **(n)** "Post Effective-Date Obligations" shall mean all now existing and hereafter arising debts, obligations, liabilities, covenants and duties of the Debtor Providers, in their capacities as Reorganized Debtors, to HCI of every kind and description, however evidenced, whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, primary or secondary, liquidated or unliquidated, arising on and after the Effective Date, and whether arising under or related to this Ratification Agreement, the Factoring Agreement, the Exit Funding Order, by operation of law or otherwise, including, without limitation, all discount fees, early termination fees, other fees, commissions, costs, expenses and attorneys' and accountants' fees and expenses incurred in connection with any of the foregoing.

    **(o)** "Pre-Effective Date Collateral" shall mean all property of the Debtors, tangible or intangible, described in the DIP Funding Facility as security for the Pre-Effective Date Obligations (as hereinafter defined).

    **(p)** "Pre-Effective Date Obligations" shall mean all now existing and previously arising debts, obligations, liabilities, indebtedness, covenants and duties of Provider to HCI of every kind and description, however evidenced, whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, primary or secondary, liquidated or unliquidated, arising before the Effective Date and whether arising under or related to the DIP Funding Facility, by operation of law or otherwise, including, without limitation, all discount fees, early termination fees, other fees, commissions, costs, expenses and attorneys' and accountants' fees and expenses incurred in connection with any of the foregoing.

    **(q)** "Provider" shall mean HEALTH CARE INVESTORS, INC., formerly a debtor and debtor-in-possession in Case No. 08-22177 in the U.S. Bankruptcy Court for the District of Connecticut (the "**Bankruptcy Court**"), (2) HEALTH CARE ALLIANCE, INC., a Connecticut corporation, dba Blair Manor, formerly a debtor and debtor-in-possession in Case No. 08-22178 pending in the Bankruptcy Court; (3) HEALTH CARE ASSURANCE, LLC, a Connecticut limited liability company dba Douglas Manor; formerly a debtor and debtor-in-possession in Case No. 08-22179 pending in the Bankruptcy Court, and (4) HEALTH CARE RELIANCE, LLC, a Connecticut limited liability company dba Ellis Manor, formerly a debtor and debtor-in-possession in Case No. 08-22180 pending in the Bankruptcy Court, *each of these four persons, in its capacity as a reorganized debtor, from and after the Effective Date, being individually and collectively, jointly and severally, the "Provider"; collectively, the "Providers."*

    **(r)** "Reorganized Provider" shall mean the Providers.

    **(s)** "Reorganized Debtors" shall mean the Providers, together with Affinity Health Care Management, Inc., former a debtor and debtor-in-possession in Case No. 08-22175 pending in the Bankruptcy Court, in Affinity Health Care Management, Inc.'s own capacity as a reorganized debtor, from and after the Effective Date.

    **1.2**        <u>Amendments to Definitions in Factoring Agreement.</u>

        **(a)**    All references to any property of Provider in the Factoring Agreement or any other similar term referring to the security for the Pre-Effective Date Obligations in the Factoring Agreement are hereby amended to mean, collectively, the Pre-Effective Date Collateral and the Post Effective-Date Collateral.

        **(b)**    All references to Provider, including, without limitation, to the terms "Provider", "Client", "Factored Client", "Obligor", "you" or "your" in the Factoring Agreement shall be deemed and each such reference is hereby amended to mean Provider, as defined herein to be the Reorganized Debtors, individually and collectively, jointly and severally, and their respective successors and assigns.

        **(c)**    All references to the term "Purchase Agreement" or terms of similar import in the Purchase Agreement or in the other instruments and documents comprising the Exist Funding Facility shall, from and after the Effective Date of the Plan, be deemed and each such reference is hereby amended to mean the Existing Purchase Agreement as that agreement is hereby ratified, assumed and adopted by the Providers pursuant to the terms hereof, as the said agreement may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

        **(d)**    All references to the term "Obligations" in this Ratification Agreement and in the Factoring Agreement shall be deemed to mean and each such reference in the Factoring Agreement is hereby amended to mean, both the Pre-Effective Date Obligations and the Post Effective-Date Obligations.

    **1.3**        <u>Interpretation.</u>

        **(a)**    All references to the terms "HCI," "Provider" or any other person pursuant to the definitions in the recitals hereto or otherwise shall include its successors and assigns.

        **(b)**    All references to any term in the singular shall include the plural and all references to any term in the plural shall include the singular.

        **(c)**    All terms not specifically defined herein which are defined in the Uniform Commercial Code (the "UCC") shall have the meaning set forth therein.

**2.**    **ASSUMPTION, ADOPTION AND RATIFICATION**

        The Providers hereby (a) ratify, assume, adopt and agree to be bound by the Existing Factoring Agreement and the other instruments and documents and any related agreement to which they are parties, which represent the DIP Funding Facility, and (b) agree to pay all of the Pre-Effective Date Obligations. Without limitation thereof, the Existing Factoring Agreement, as amended by this Agreement, is incorporated herein by reference and hereby is and shall be deemed ratified, adopted, adopted and assumed in full by each Provider, in its capacity as a Reorganized Debtor, together with all documents and instruments comprising the Exit Funding Facility, including the Validity Guaranty of Affinity Health Care Management, Inc., and

as so ratified, adopted and amended considered as agreements between the Providers, each in their capacity as a Reorganized Debtor, and HCI. Each Provider hereby ratifies, restates, affirms and confirms all of the terms and conditions of the Factoring Agreement, as so ratified, assumed, amended and supplemented pursuant hereto and pursuant to the Exit Funding Facility Motion and the Exit Funding Facility Order, and agrees to be fully bound, as Reorganized Debtor, by the terms of the Factoring Agreement and by all other documents and instruments included within the Exit Funding Facility to which it is a party. HCI hereby ratifies, affirms, and agrees to be bound by, and perform in accordance with, the terms and conditions of the Factoring Agreement; as ratified, assumed, amended and supplemented pursuant hereto and pursuant to the Exit Funding Facility Motion and the Exit Funding Facility Order.

3.  **ACKNOWLEDGMENT**

     3.1     <u>Acknowledgment of Security Interests.</u> Each Debtor and Reorganized Debtor hereby acknowledges, confirms and agrees that HCI has valid, enforceable and perfected first priority and senior security interests in all Pre-Effective Date Accounts and other Conveyed Property sold to HCI and HCRFSPC by the Provider Debtors under the Existing Factoring Agreement and the DIP Funding Facility, and in all Pre-Effective Date Collateral heretofore granted to HCI and HCRFSPC by the Provider Debtors pursuant to the Existing Factoring Agreement and the DIP Funding Facility. Without limitation thereof, each Provider further acknowledges, confirms and agrees that, upon timely filing of appropriate financing statements in the appropriate filing offices naming the Reorganized Debtors as "debtors" and HCI as secured party, HCI shall also have valid and enforceable first priority and senior security interests in all Post-Effective Date Accounts and other Conveyed Property sold to HCI under the Factoring Agreement after the date hereof, and a first priority lien in all Post Effective-Date Collateral granted to HCI under the Factoring Agreement or otherwise granted to or held by HCI under the Exit Funding Facility, subject only to such senior liens in certain assets of the Reorganized Debtors as the Reorganized Debtors may later grant to HUD and the FHA Mortgagees, with the written consent of HCI, post-confirmation and prior to the Effective Date, pursuant to Intercreditor Agreements and Riders thereto and associated agreements between HCI, the Reorganized Debtors, HUD and various FHA Mortgagees of the Provider's landlords and related documents.

     3.2     <u>Binding Effect of Documents.</u> Each Provider hereby acknowledges, confirms and agrees that: (a) the Factoring Agreement and any related agreement to which it is a party have been duly executed and delivered to HCI by such Provider is in full force and effect as of the date hereof (b) the agreements and obligations of such Provider contained in the Factoring Agreement constitute the legal, valid and binding obligations of such Provider enforceable against it in accordance with its terms and such Provider has no valid defense, offset or counterclaim to the enforcement of such agreements and obligations, and (c) HCI is and shall be entitled to all of the rights, remedies and benefits provided for in the Factoring Agreement.

     3.3     <u>No Release.</u> Nothing contained herein shall be deemed to terminate, modify or release any obligations of any Debtor, Provider or any non-Provider guarantor or any other obligor to HCI with respect to the Pre-Effective Date Obligations, the Post Effective-Date Obligations, the Existing Factoring Agreement and related funding documents and instruments

included within the DIP Funding Facility, or under the Purchase Agreement or any document or instrument included within the Exit Financing Facility, or otherwise. Without limitation thereof, the obligations and duties of the Debtors to HCI with respect to the DIP Funding Facility shall not be discharged under the Plan and nothing in the Plan nor herein shall release any claims that HCI has against third-party non-debtor guarantors of the obligations of the Debtors and the Reorganized Debtors to HCI.

        3.4        <u>Pre-Effective Date Obligations.</u>  Each Provider hereby acknowledges, confirms and agrees that such Provider is indebted to HCI for the Pre-Effective Date Obligations, as of the Effective Date, in respect of the obligations and indebtedness arising under the Existing Factoring Agreement and due and owing to HCI by the Provider Debtors, and for contingent liabilities arising thereunder and not yet paid, together with discount fees, costs, expenses, other fees (including attorneys' fees) and other charges now or hereafter owed by such Provider to HCI, all of which, as assumed herein by the Providers, are unconditionally owing by such Providers, individually and collectively, jointly and severally to HCI, without offset, defense or counterclaim of any kind, nature and description whatsoever.

        3.5        <u>Subordination of Provider Obligations to Guarantors</u>.  Each Provider hereby acknowledges, confirms and agrees that any and all obligations of Provider to Benjamin Fischman and Samuel Strasser (each a "Guarantor") now existing or hereafter arising, including, without limitation, debt service owed on approximately $250,000 in loans made to the Providers by the Guarantors from the proceeds of HHF financing, shall be subordinated to payment of all fees, obligations and indebtedness of the Providers to HCI; provided, however, that normal debt service thereon shall be permitted so long as there is no default under the Exit Funding Facility.

## 4.    <u>GRANT OF SECURITY INTERESTS</u>

Each Provider, as Reorganized Debtor, hereby sells, grants, pledges and assigns to HCI, and also confirms, reaffirms and restates the prior grant to HCI, as buyer and owner, of a continuing first-priority security interest in all Purchased Accounts and other Conveyed Property sold to HCI under the Purchase Agreement and the other documents, orders and instruments comprising the Exit Funding Facility and, without limitation of the foregoing, each Provider, as Reorganized Debtor, as collateral security for the prompt performance, observance and payment in full of all of all duties and obligations (including, without limitation, the Pre-Effective Date Obligations assumed hereunder and the Post Effective-Date Obligations) owed to HCI by the Provider under the Purchase Agreement and the other funding documents comprising the Exit Funding Facility, further grants to HCI a security interest in and lien upon, and a right of setoff against, all of the Collateral pledged to HCI in the Purchase Agreement and the other documents comprising the Exit Funding Facility, wherever located, of any kind or nature, including without limitation, the Pre-Effective Date Collateral granted to HCI under the Purchase Agreement, which lien shall be a first priority lien, as to Non-Purchased Accounts, credit balances and other AR Factor Senior Collateral (as that term is defined in the Intercreditor Agreement(s) of even date herewith between HCI, Providers, HUD and the FHA Mortgagees), whether now existing or hereafter acquired, and the proceeds and products thereof, and a junior lien, as to the AR Factor Junior Collateral (as that term is defined in the Intercreditor Agreement.)

5. **ADDITIONAL REPRESENTATIONS. WARRANTIES AND COVENANTS**

In addition to the continuing representations, warranties and covenants heretofore and hereafter made by each Provider to HCI, whether pursuant to the Factoring Agreement, this Agreement or otherwise, and not in limitation thereof, each Provider hereby represents, warrants and covenants to HCI the following (which shall survive the execution and delivery of this Ratification Agreement), the truth and accuracy of which, or compliance with, being a continuing condition of the making of fundings, advances, and other financial accommodations by HCI in favor of the Providers:

5.1   Exit Funding Order. The Exit Funding Facility Order and the Order of the Bankruptcy Court confirming the Plan has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified by any Bankruptcy Judge or District Court Judge and is not subject to any pending appeal or stay.

5.2   Use of Proceeds. All advances, fundings and other financial accommodations provided by HCI to any Provider pursuant to the Exit Funding Order, the Factoring Agreement or otherwise, shall be used exclusively for making payments due under the Plan, and for general operating and working capital purposes of such Provider in the ordinary course of its business. No portion of any Administrative expense claims or other claims relating to Providers' Chapter 11 Case shall be paid with the proceeds of such advances, fundings and other financial accommodations provided by HCI to Provider, except as has been expressly disclosed by Providers to HCI and to the Bankruptcy Court and provided for under the Plan, once Bankruptcy Court approved and voted upon favorably by HCI.

5.3   Professional Fees. Professional Fees of the Debtors' professionals due and payable under the Plan will be paid ratably in equal monthly amounts, after the Effective Date, over fifteen (15) months time, commencing August 1, 2010, with three (3) payments made in 2010 and twelve (12) payments made in 2011.

5.4   No Impairment. For the term of the Exit Funding Facility, the Providers and their members and stockholders shall take no actions which will impair or limit the exercise by HCI of its rights under this Agreement or any other Exit Funding Facility instrument or document, so long as HCI is not in default thereunder.

6. **OTHER AMENDMENTS TO FACTORING AGREEMENT**

6.1   Section 1.4(j) of the Factoring Agreement is hereby amended by deleting it in its entirety and substituting the following in lieu thereof:

"INTENTIONALLY OMITTED."

6.2   The Factoring Agreement is hereby amended by adding a new Section 2.3:

"Section 2.3   Conditions to Exit Funding Facility Purchase. As a

condition precedent to the purchase of any Proposed Accounts pursuant to the Exit Funding Facility, Purchaser and Provider shall have received the Exit Funding Order entered by the Bankruptcy Court, as well as the Bankruptcy Court's order confirming the Plan, each in form and substance satisfactory to Purchaser and Provider."

6.3     Section 5.2a of the Factoring Agreement is hereby amended by deleting the reference to subsection "(oo)" of Exhibit 5.1 and substituting "(tt)" in lieu thereof.

6.4     Section 7.26 of the Factoring Agreement, concerning the Bankruptcy Rider, is struck.

6.5     Section 7.27 of the Factoring Agreement, governing Bankruptcy Court approval, is struck.

6.6     Exhibit 1.1 of the Factoring Agreement, Definitions, is amended to delete the reference to the "Factoring Order" and add, in its place, the definition of the Exit Funding Facility Order, as defined herein, and to change the definition of "Purchase Agreement" to read "means that certain Nonrecourse Healthcare Accounts Receivable Purchase Agreement dated November 20, 2009, as amended by and in effect pursuant to the Ratification, Assumption and Assignment Agreement dated as of the Effective Date of the Third Amended Joint Plan of Reorganization For Affinity Health Care Management, Inc., Health Care Investors, Inc., Health Care Alliance, Inc., Health Care Assurance, L.L.C. and Health Care Reliance, L.L.C., between Health Capital Receivables Funding Administrative Corporation, a New York corporation, as Purchaser, and Health Care Investors, Inc., a Connecticut corporation, dba Alexandria Manor, Health Care Alliance, Inc., a Connecticut corporation, dba Blair Manor, Health Care Assurance, L.L.C., a Connecticut limited liability company, dba Douglas Manor and Health Care Reliance, LLC, a Connecticut limited liability company, dba Ellis Manor, each in their capacities as reorganized debtors, individually and collectively, jointly and severally, as Provider."

6.7     Exhibit 1.2 of the Factoring Agreement, the Purchase Assignment, is hereby amended, in the fourth paragraph, to state, in relevant part, "that certain Nonrecourse Healthcare Accounts Receivable Purchase Agreement dated November 20, 2009, as amended by and in effect pursuant to the Ratification, Assumption and Assignment Agreement dated as of the Effective Date of the Third Amended Joint Plan of Reorganization For Affinity Health Care Management, Inc., Health Care Investors, Inc., Health Care Alliance, Inc., Health Care Assurance, L.L.C. and Health Care Reliance, L.L.C., between Health Capital Receivables Funding Administrative Corporation, a New York corporation, as Purchaser, and Health Care Investors, Inc., a Connecticut corporation, dba Alexandria Manor, Health Care Alliance, Inc., a Connecticut corporation, dba Blair Manor, Health Care Assurance, L.L.C., a Connecticut limited liability company, dba Douglas Manor and Health Care Reliance, LLC, a Connecticut limited liability company, dba Ellis Manor, each in their capacities as reorganized debtors, individually and collectively, jointly and severally, as Provider."

6.8     Exhibit 2.1 of the Factoring Agreement is hereby amended to strike existing paragraph (p), which will now read "intentionally deleted", and to change paragraph (r) to read

"The Bankruptcy Court shall have entered the Exit Funding Facility Order and the Plan Confirmation Order, each in form and substance acceptable to Purchaser, and all documents and instruments required by the Exit Funding Facility, as defined in the Ratification, Amendment and Assumption Agreement shall have been executed and delivered, in the form required by Purchaser.

**6.9** Exhibit 7.16 of the Factoring Agreement is hereby amended to require the further Validity Guarantees required by HCI from Messrs. Fischman and Stasser with respect to the Purchase Agreement, as ratified, assumed and amended as part of the Exit Funding Facility.

**6.10** Exhibit 4.6 of the Factoring Agreement, Collateral, is amended, in the last paragraph, to read, in relevant part "[o]r otherwise given rise to Indebtedness under that certain Nonrecourse Healthcare Accounts Receivable Purchase Agreement dated November 20, 2009, as amended by and in effect pursuant to the Ratification, Assumption and Assignment Agreement dated as of the Effective Date of the Third Amended Joint Plan of Reorganization For Affinity Health Care Management, Inc., Health Care Investors, Inc., Health Care Alliance, Inc., Health Care Assurance, L.L.C. and Health Care Reliance, L.L.C., between Health Capital Receivables Funding Administrative Corporation, a New York corporation, as Purchaser, and Health Care Investors, Inc., a Connecticut corporation, dba Alexandria Manor, Health Care Alliance, Inc., a Connecticut corporation, dba Blair Manor, Health Care Assurance, L.L.C., a Connecticut limited liability company, dba Douglas Manor and Health Care Reliance, LLC, a Connecticut limited liability company, dba Ellis Manor, each in their capacities as reorganized debtors, individually and collectively, jointly and severally, as Provider.

**6.11** Exhibit 5.1 to the Factoring Agreement is hereby amended by deleting section (pp), and substituting the following in lieu thereof:

> "(pp) The Exit Funding Facility Order or the Order of the Bankruptcy Court confirming the Plan shall be modified, reversed, revoked, remanded, stayed rescinded, vacated or amended on appeal or by any Bankruptcy or District Court Judge, or by any appellate tribunal.
>
> (qq) Any Provider shall default on its obligations under the Plan, beyond cure.
>
> (rr) The failure of a closing to occur, post-confirmation of the Plan and prior to the Effective Date of the Plan (which shall be no later than June 30, 2010) of (1) a restructuring of the mortgage loans guaranteed by HUD on Alexandria Manor and Blair Manor, resulting in estimated savings on debt service payable by their landlords of approximately $33,000, per annum, combined, and a restructuring of the mortgage loan for Douglas Manor, resulting in savings of approximately $300,000 per annum for the term of the Plan (compared to pre-restructure rates) to the landlords of these providers, and (2) a restructuring, by HUD, who shall continue to hold the Ellis Manor mortgage loan, resulting in debt service

savings of approximately $450,000 per annum, for the term of the Plan (compared to pre-restructure rates), for the landlord of this provider, and (3) a related restructuring post-confirmation on lease amendments between these landlords and these four providers, acceptable to HCI, which shall reduce the rental obligations of the four providers now existing by the same mounts as the savings in debt service to levels, from and after the Effective Date, *for the term of the Plan*, resulting in savings, *for the term of the Plan*, in rent payable by the Providers in the approximate aggregate amounts projected as shown on line 47 of the projections accompanying the Disclosure Statement, such reduced rental levels reflecting the anticipated favorable terms of the aforesaid mortgage restructurings.

(ss) Any Provider shall default under its obligations to its landlord, HUD or any FHA Mortgage, under any agreement, including, without limitation, the Lessee Security Agreement anticipated to be executed on the Effective Date.

(tt) Any Provider shall become obligated for rent to its landlord beyond the rent levels (net of projected savings) projected in the Disclosure Statement for the Plan."

(uu) There shall be a default under any document or instrument included within the Exit Funding Facility.

6.12    The Term Sheet attached to the Purchase Agreement is hereby amended by deleting it in its entirety and substituting the Term Sheet attached hereto as <u>Appendix A</u>, such terms being contained in the Exit Funding Facility letter of intent, dated May 5, 2010, submitted to the Bankruptcy Court with the Exit Funding Facility Motion of that date, such term sheet to be signed by each of the Providers, in their capacities as reorganized debtors.

6.13    <u>Exhibit 7.26</u> of the Factoring Agreement, the Bankruptcy Rider, is deleted.

6.14    All references in the Purchase Agreement to the Provider or, as the case may be, to the Providers, shall mean the Reorganized Providers, individually and collectively, jointly and severally, or, as the case may be, to the particular Provider, as the context may require.

6.15    <u>Exhibit A and Exhibit B</u> are each modified to refer to the Nonrecourse Healthcare Accounts Receivable Purchase Agreement dated November 20, 2009, as amended by and in effect pursuant to the Ratification, Assumption and Assignment Agreement dated as of the Effective Date of the Third Amended Joint Plan of Reorganization For Affinity Health Care Management, Inc., Health Care Investors, Inc., Health Care Alliance, Inc., Health Care Assurance, L.L.C. and Health Care Reliance, L.L.C., between Health Capital Receivables Funding Administrative Corporation, a New York corporation, as Purchaser, and Health Care Investors, Inc., a Connecticut corporation, dba Alexandria Manor, Health Care Alliance, Inc., a Connecticut corporation, dba Blair Manor, Health Care Assurance, L.L.C., a Connecticut limited

liability company, dba Douglas Manor and Health Care Reliance, LLC, a Connecticut limited liability company, dba Ellis Manor, each in their capacities as reorganized debtors, individually and collectively, jointly and severally, as Provider.

## 7. CONDITIONS PRECEDENT

The agreement and commitment of HCI to make advances, fundings and other financial accommodations available to the Providers under the Exit Funding Facility and this Ratification Agreement is further subject to the following further conditions precedent:

**7.1** <u>Due Execution</u>. HCI shall have received this Ratification Agreement, duly executed and delivered by each of the Providers, as Reorganized Debtors, together with all other instruments and documents, likewise duly executed and delivered, in all cases in form and substance acceptable to and as required by HCI from the Debtors and the Reorganized Debtors as part of the Exit Funding Facility, including, without limitation, (i) UCC-1 financing statements (for both HCI, as owner and buyer of the Purchased Accounts and the other Conveyed Property and, also, as lender, with a security interest in Non-Purchased Accounts, credit balances and other assets, as more fully set forth in the Factoring Agreement) showing each Reorganized Debtor as Debtor and HCI as the Secured Party; (ii) landlord estoppel and waiver letters executed by the landlord of each lease to which a Provider is a party; (iii) Subordination, Non-Disturbance and Attornment Agreements by each FHA Mortgagee in favor of HCI the Provider landlords; (iv) frozen junior liens for HCI on LLC membership interests and stock owned by Ben Fischman and Sam Strasser in the Alexandria, Blair and Douglas Provider landlords, such frozen liens to be junior in priority to the liens thereon of Housing & Healthcare Finance, LLC (HHF) under the HUD mortgage restructuring transaction, and an Intercreditor and Subordination Agreement between HCI and HHF covering both (i) the frozen junior liens of HCI in the equity interests of Messrs. Fischman and Strasser in the landlords of the Alexandria, Blair and Douglas Providers, as reorganized debtors, as being pledged to HCI by Messrs. Fischman and Strasser as further collateral in support of their Validity Guarantees in respect of the Purchase Agreement and the Exit Funding Facility and, moreover, (ii) junior liens, subordinate to the liens of HCI, to be granted by Messrs. Fischman and Strasser to HHF in the LLC membership interests and stock of Messrs. Fischman and Strasser in the Alexandria, Blair and Douglas Providers, as reorganized debtors, as collateral for mortgage loans being extended by HHF to Messrs. Fischman and Strasser as part of the HUD mortgage loan restructuring; (v) legal opinions as to corporate and "true sale" matters in connection with the Exit Funding Facility and the Plan; (v) new Validity Guarantees, as required by the Exit Funding Facility,

**7.2** <u>Agreements</u>. HCI shall have entered into the following documents, in each case acceptable in form and substance to HCI:

**(a)** Intercreditor and Subordination Agreement(s) between HCI, HUD, the various Landlords and their FHA Mortgagees, and Riders thereto;

**(b)** A License and Cooperation Agreement between HUD, the FHA Mortgagees for the landlords of each Provider, and HCI, granting each other access to property in which the other has a senior lien;

DC:2335073v1

- 13 -

    **(c)** An agreement with the State of Connecticut Department of Social Services relating to limitations on recoupment after the Effective Date, acceptable to HCI, consistent with the terms of the November 20, 2009 Order;

    **(d)** A written acknowledgement and stipulation by the Centers for Medicare and Medicaid Services (CMS) that the application of 42 CFR §442.90 will result in HCI's liability for any monies paid to HCI directly by CMS as the proceeds of Accounts sold or pledged to HCI by the Reorganized Debtors, if and when HCI later receives such a court order allowing direct payment to HCI, will be "capped" at the amount(s) paid to HCI under such court order(s);

    **(e)** An agreement with the Internal Revenue Service, deferring and limiting certain rights of the Internal Revenue Service after the Effective Date to recover certain federal taxes via set-off from the proceeds of collected accounts sold or pledged to HCI by Provider, consistent with the November 20, 2009 court order;

    **(f)** An agreement with the State of Connecticut Department of Revenue Services, acceptable to HCI, requiring, after the Effective Date, the escrow of provider taxes, and limiting certain rights of the Department of Revenue Services to recover certain taxes via recoupment or set-off, after the Effective Date, consistent with the November 20, 2009 court order;

    **(g)** All agreements required by the Intercreditor Agreement, including Subordination and Non-Disturbance Agreements, Landlord Waiver & Estoppel Agreements and rentals not to exceed required mortgage payments and related fees, to be paid by the Providers, not in excess, for the term of the HCI funding, of the rentals provided for under the court-approved Disclosure Statement for the Plan;

    **(h)** Security agreements granting HCI a frozen junior lien in the equity interests (LLC membership interests and stock) in the entities which are the landlords of the Alexandria, Blair and Douglas Providers being pledged to HCI by Messrs. Fischman and Strasser as further collateral security for their Validity Guarantees to HCI with respect to the Purchase Agreement and the Exit Funding Facility, such frozen liens to be junior in priority to the liens of Housing & Healthcare Finance, LLC (HHF), therein, and related Intercreditor and Subordination Agreements between HCI and HHF covering both (i) such frozen junior liens being received by HCI and, moreover, (ii) the frozen junior liens that HHF will receive in the LLC membership interests held by Messrs. Fischman and Strasser in the Alexandria, Blair and Douglas Providers, as reorganized debtors, as security for loans being extended by HHF to Messrs. Fischman and Strasser as part of the HUD loan restructuring.

    **(i)** Control Agreements granting HCI a first priority security interest in all bank accounts of the Providers at commercial banking institutions (other than Provider accounts into which proceeds of Medicare, Medicaid and other governmental receivables are paid), acceptable in form and substance to HCI; and

(j)    Such other agreements, documents, certificates and opinions as HCI shall require, including any to meet the terms of the May 5, 2010 letter of intent from HCI governing exit funding.

**7.3**    <u>Acceptance of Plan</u>. HCI shall have accepted, in writing, the Plan, and shall have voted to accept the Plan in the appropriate proceedings, and the Plan shall have been confirmed.

**7.4**    <u>Certificates/Good Standing</u>. HCI shall have received (i) a Closing Certificate from each Provider, in the form reasonably required by HCI, as to the incumbency, authority and due execution by an officer of each Provider of this Ratification Agreement and all other documents comprising the Exit Funding Facility, together with satisfactory evidence of such incumbency and such other matters as HCI may require; (ii) a copy of resolutions, acceptable in form to HCI, authorizing the entry by each Provider into this Ratification Agreement and the other documents comprising the Exit Funding Facility, and the execution, delivery and performance of the Provider thereunder; (iii) a certificate of each Provider that is a corporation as to its good standing, certified by the relevant authority of the jurisdiction of organization of such entity, attaching the certificate of incorporation of such Provider, and a similar certificate as to each Provider that is a limited liability company; (iv) a good standing certificate of each Provider from its jurisdiction of organization; and (v) copies of the revised articles, bylaws and operating agreements of each Provider, as required by the Plan.

**7.5**    <u>Representations and Warranties</u>. Each of the representations and warranties of the Debtor Providers in the Existing Purchase Agreement and the other documents comprising the DIP Funding Facility, and by the prospective Reorganized Debtors in this Agreement, and of each Guarantor of the Provider's obligations, hall be true and correct in all respects as of confirmation of the Plan and, moreover, as of the Closing on the Exit Funding Facility (which date shall be the Effective Date of the Plan, and no earlier than the date that all conditions precedent to HCI's performance under this Agreement, the Purchase Agreement, and the other documents comprising the Exit Funding Facility shall each have been satisfied), except to the extent that any representation is made at an earlier date, in which case it shall be true as of such earlier date.

**7.6**    <u>Fees and Costs</u>. HCI shall have received all fees and costs to which it is entitled under the Existing Purchase Agreement, on or before the Closing of the Exit Funding Facility, and there shall be no caps thereon, other than, as to legal fees of HCI's counsel, to be sought by fee application(s), as may be ordered by the Bankruptcy Court as to legal fees and expenses of HCI incurred in connection with the DIP Funding Facility and the Exit Funding Facility prior to the Effective Date.

**7.7**    <u>Legal Opinion of Counsel to the Provider</u>. HCI shall have received a legal opinion, in form and substance acceptable to HCI, from counsel to the Provider, as to such corporate and other matters as HCI may require (including an opinion by Special Counsel to the Providers that sales of Accounts and other Conveyed Property to HCI under the Exit Funding Facility constitute "true sales" of such property).

**7.8**    <u>Compliance with DIP Funding Facility/Waivers</u>. HCI shall have received a Certificate of Provider, in form and substance acceptable to HCI, certifying that no Default or